ROGERS, J.
 

 The defendant company appeals from a judgment condemning it to pay the plaintiff company a large sum of money as damages .for breach of contract to sell and deliver a number of barrels of sugar.
 

 There is no dispute between the parties as to the agreement to sell and the failure to deliver the sugar, the defendant company seeking to escape liability for its default solely on the ground that it acted in the transaction as the broker of J. N. Pharr & Sons, Limited, and not as a principal.
 

 The plaintiff company purchased the sugar from the defendant company through the brokerage firm of Jourdan & McCall. The contract stipulated for the sale and delivery of five cars (approximately 150 barrels each) of granulated sugar, Glenwild 'brand, and 1,000 barrels of the same brand of prime yellow clarified sugar. It was originally oral, but was promptly confirmed by the brokers, Jourdan & McCall, by letters addressed to the respective contracting parties. The defendant was addressed in its corporate name, without any indication of agency. The letter began: “This will confirm purchase made from you yesterday.” It also set forth that, “Schmidt & Zeigler is to make a deposit of $5.00 per bbl. at once with you on this purchase.” No disclaimer was made at that time by the defendant company that it was acting merely as an agent and not as the principal. On the contrary, the defendant company, acting through its officers, prepared and sent the plaintiff company a form of receipt which it proposed to issue in its own name
 
 *628
 
 for the deposit (subsequently waived) contemplated by the contract.
 

 The defendant company performed that part of the contract calling for the delivery of five cars of granulated sugar. This sugar, about which no complaint is made, was invoiced to the plaintiff company by the defendant company in its own name and not for account of any one else. These invoices, with one exception, were paid by the plaintiff company to the defendant company direct. The exception was one shipment for which the plaintiff company also received an invoice from J. N. Pharr & Sons, Limited, which company it paid, after receiving the consent of the defendant company to do so. All shipping instructions were given to the plaintiff company by the defendant company either direct or through the brokers, Jourdan & McCall. At no time did the defendant company claim that it was not acting as a principal, but as a broker in the transaction, until it became certain that the contract would not be fulfilled, when the defendant company, for the first time, disclaimed liability. Prior to this, some yellow clarified sugar of the Glenwild brand was by sample tendered by the defendant company to the plaintiff company, but was rejected by the latter company as being under grade. Subsequently, the defendant company offered to furnish sugar of other brands, but even these sugars graded below that of prime yellow clarified, and they were refused by the plaintiff company. The defendant company then failed to "deliver the prime yellow clarified sugar stipulated in the contract, and the plaintiff company having, in turn, defaulted to its customers, the latter canceled their orders. After some correspondence between the parties, this suit was instituted by the plaintiff company to recover the amount of loss suffered by it by reason of the defendant company’s breach of the contract.
 

 The testimony of Mr. Oliver D’Aquin, who handled the deal as the representative of the brokerage firm of Jourdan & McOall, is that the defendant company dealt with him in no other capacity than as a principal. This testimony is not successfully refuted by the defendant company; and, as a matter of fact, is supported by the written confirmation of the agreement and the conduct of the defendant company throughout the transaction. In these circumstances, so far as the plaintiff is concerned, it makes no difference that the Glenwild brand of sugar was manufactured by J. N. Pharr & Sons, Limited, and that the defendant actually sold the sugar for account of the Pharr Company, having no financial interest in the sales beyond the brokerage of 30 cents a barrel, which, was added to the purchase price of the sugar.
 

 An agent who makes a contract in his own name for his principal is personally responsible, unless at the time he enters into the contract he discloses the fact of his agency and the identity of his principal. It might well be, as suggested by the judge of the district court, that “a broker circumstanced as was the defendant in this case might well balance against the disadvantage of personal liability the advantage of having the proceeds of a sale pass through his hands, or there might be other considerations which he would weigh for himself.” But, in any event, there was nothing to preclude the defendant company, if it chose to do so, from selling the plaintiff company sugar in its own name instead of in the name of its principal.
 

 The stipulation in the contract for the payment by the plaintiff company to the defendant company of a brokerage of 30 cents a barrel might, if standing alone, indicate, to some extent, the nature of the agreement. But, construed with other provisions of the contract and the facts as disclosed by the record,
 
 *630
 
 it can have no other effect than as a mere addition to the purchase price. The contract between the parties was entered into during the period immediately following the World War, when a great scarcity of sugar existed and it was impossible for the plaintiff company to purchase sugar to take the place of that which the defendant company had failed to deliver. Hence, the plaintiff company alleged and sued for as damages the profits it had lost. The judge of the district court held the plaintiff company proved the damages claimed and rendered judgment accordingly. We think the judgment is correct, except as to the profits which the plaintiff company claims to have lost on sales during the month of November and December, 1919, aggregating 100 barrels of sugar to the local retail trade. The proof on this item of the plaintiff company’s claim is, in our opinion, entirely too vague and indefinite to permit of a recovery, except' as to 20 barrels of sugar sold to O. Oampo and J. Sciambra — 10 barrels to each. The judgment will therefore have to be reduced to the extent it allowed the plaintiff company for a loss of the profits on 80 barrels of the 100 barrels of sugar which the company alleged it had sold to the local retail trade. This reduction amounts to $475.20. We also think that the defendant company should be allowed, as an addition to the purchase price, a credit of 30 cents a barrel on the 920 barrels of sugar which the plaintiff company had sold to its customers and which the defendant company failed to deliver. This credit amounts to $276. The sum of the two items by which the judgment must be reduced is $751.20.
 

 For the reasons assigned, the judgment appealed from is amended by reducing the amount of the judgment in favor of the plaintiff company and against the defendant company from $5,292.90 to $4,541.70, and as thus amended the judgment appealed from is affirmed. The plaintiff and appellee is to pay the costs of this appeal.