**DUMAINE & CO. v. GAY, SULLIVAN & CO., Inc.**

**No. 17048.**

Court of Appeal of Louisiana. Orleans.

Nov. 13, 1939.

Writ of Certiorari Granted Jan. 9, 1940.

118

For prior opinion, see 188 So. 163.

Miller, Bloch & Martin, of New Orleans, for appellant.

Adam H. Harper, of New Orleans, for appellee.

McCALEB, Judge.

In our original opinion (see 188 So. 163), we dismissed the plaintiff's suit on an exception of no right of action as it was our view that the allegations of the petition disclosed that plaintiff purchased the sugar from the defendant in its capacity as a broker or agent and that, as such, it was without authority to maintain an action for breach of contract. A careful reconsideration of the matter on rehearing has convinced us that our former ruling is not well founded.

The pertinent part of the plaintiff's petition, against which the exception of no right of action is directed, reads as follows:

"That under date of January 26, 1934, and for sometime prior thereto, petitioner was engaged in the business of selling sugar, as broker, and, on said date, while engaged in said business, ordered of the defendant corporation, * * * Eight Hundred (800) bags of 'Slack Central' or 'Rosedale seconds', sugar to be shipped by the defendant or its agents to petitioner's consignee * * *"

We now find that the foregoing averment that plaintiff is a sugar broker and that the sugar was purchased while it was engaged in its brokerage business does not, of itself, justify the conclusion that it was acting for someone else at the time the order was placed with the defendant. The charge, unaided by the other allegations contained in the petition, merely exhibits that plaintiff purchased sugar while it was engaged in the sugar brokerage business. Standing alone, the averment is vague and indefinite and we are unable to discern from the language employed whether plaintiff was acting for itself or for another.

On the other hand, an examination of the petition as a whole leaves no room for doubt that plaintiff bought the sugar from the defendant for its own account. Plaintiff avers, in other articles of its pleading, that the sugar was consigned to Preserves & Honey, Inc., St. Louis, Missouri; that when the sugar arrived at St. Louis it was rejected by its consignee because it contained foreign and deleterious substances rendering it unfit for human consumption; that, upon the rejection of the shipment, it contacted defendant and offered the latter an opportunity to correct the defect; that, upon the defendant's refusal to do so, it authorized its consignee to reprocess the sugar and remove therefrom the foreign substances; that the cost of reprocessing amounted to $210 which the consignee charged against its account and that, as a direct result of defendant's breach of contract, it has suffered damages in that amount plus a small item of $3.41 representing costs expended by it in furnishing one bag of the lot of sugar to the defendant for the purpose of having the same analyzed by the latter.

We think that the foregoing averments sufficiently explain the apparent ambiguity contained in the above quoted portion of the petition and makes it clear that plaintiff was acting in its own behalf and not in a representative capacity. The ex-

ception of no right of action is therefore overruled.

The evidence on the merits of the case reveals the following facts: That plaintiff purchased the sugar from the defendant on sample and resold it to Preserves & Honey, Inc., of St. Louis, Missouri; that upon arrival of the shipment, it was discovered by the consignee that a large portion of the sugar was defective in that it contained enamel; that Preserves & Honey, Inc., immediately communicated with the plaintiff and rejected the entire shipment; that plaintiff thereupon contacted the defendant and suggested that the sugar be reprocessed; that, upon defendant's failure to act, plaintiff authorized Preserves & Honey, Inc., to strain or reprocess the sugar and eliminate therefrom the foreign substances; that Preserves & Honey, Inc. agreed to do the reprocessing work provided plaintiff would bear the cost thereof; that the cost of reprocessing was $210 which was deducted by Preserves & Honey, Inc., from the amount it owed to plaintiff for the purchase price of the sugar and that plaintiff was also compelled to bear an expense of $3.41 representing freight charges for furnishing the defendant one bag of the lot of sugar for the purpose of having it analyzed.

The defendant contends that it is not liable to plaintiff for two reasons: (1) That it acted (to plaintiff's knowledge) merely as agent for Slack Bros., Inc., who was the refiner and vendor of the sugar, and (2) that no breach of contract on its part has been shown because the sugar delivered was of the kind and quality ordered by plaintiff. We shall discuss these propositions in their respective order.

The evidence shows that the defendant is engaged in the sugar brokerage business and that it is the agent and broker for the Refinery of Slack Bros., Inc., Rosedale, Louisiana. Prior to the time plaintiff ordered the sugar, the defendant had furnished it with samples which were marked "Slack Central" and "Rosedale seconds". Mr. J. A. Dumaine, one of the partners of plaintiff, testified that, while he knew that the defendant was engaged in business as a sugar broker, the latter did not disclose to him the name of its principal from whom the sugar was purchased. Mr. Walter A. Sullivan, the Vice-President and General Manager of the defendant, testified that he did not mention to plaintiff that the sugar was being sold for the account of Slack Bros., Inc., because it was being shipped from Rosedale, Louisiana, where Slack Bros.' Refinery was located and that he assumed that the plaintiff (who had been engaged in the sugar brokerage business in New Orleans for many years) had knowledge of the fact that the defendant was acting for Slack Bros. in the transaction.

■■■■ Counsel for the defendant contend that, since the plaintiff was well acquainted with the business conducted by the defendant and forasmuch as it knew that it was buying sugar which had been refined by Slack Bros., Inc., it was unnecessary for the defendant to disclose that it was acting for the refiner. This argument must be rejected because it is well settled that, in order for an agent to escape personal responsibility, it is necessary for him to disclose the name of his principal at the time he enters into the contract and it is not enough for him to show that the other contracting party knew that he was acting as an agent. In 3 C.J.S. Verbum Agency, page 125, § 216, it is stated:

"* * * but generally, unless there is an agreement or mutual intention of the parties to the contract that the agent should not be bound, an agent who enters into a contract in his own name without disclosing the identity of his principal renders himself personally liable, *even though the other party knows that he is acting as agent.*" (Italics ours.)

See, also, 12 C.J.S., Brokers, page 352, § 143, and Schmidt & Zeigler v. Le Bourgeois & Bush, 170 La. 625, 128 So. 656. The evidence to the effect that the plaintiff knew that it was purchasing sugar which had been refined by Slack Bros. is insufficient to authorize the holding that it was acquainted with the fact that Slack Bros. was the vendor of the goods. Non constat, the commodity might have been sold previously by Slack Bros. to the defendant or to other persons represented by the defendant.

■■■■ Counsel for the defendant, in their brief, seem to recognize the correctness of the above stated rule governing the liability of an agent who fails to disclose the name of his principal but they maintain that, after the contract was made, the plaintiff, upon ascertaining that Slack Bros. was the seller of the sugar, elected to proceed against that concern instead of the defendant and that it is well established that, under such circumstances, the agent is relieved of liability. While we recognize

that the other contracting party may lose his right to sue the agent by electing to proceed against the undisclosed principal, we doubt that the facts presented here warrant a resolution that the plaintiff has indicated that it would look exclusively to Slack Bros. for restitution. It appears from the evidence that, after the shipment of sugar had been rejected by Preserves & Honey, Inc., the plaintiff wrote several letters to the defendant in which it stated that its consignee was holding the goods in St. Louis "subject to the disposition of your planter" and that it wanted to know "whether you want us to try and sell it (the sugar) for your planter". This correspondence (all of which was addressed to the defendant) merely indicates that plaintiff had acquired knowledge of the fact that the defendant was acting for a principal and that the latter was responsible for the unsound condition of the shipment. The statements contained therein cannot be viewed either as a waiver by plaintiff of its rights against the defendant or as an election by it to obtain redress from Slack Bros.

Finally, the defendant asserts that the contract has not been breached and that, at all events, plaintiff has not shown that it suffered a loss. It is said that the commodity sold was merely represented to be "second sugar"; that it was not warranted by the defendant to be fit for human consumption and that it is commonly understood by the trade that "second sugar" sometimes contains foreign matter. The short answer to this proposition is that the sugar was sold on sample which, according to the witnesses, did not contain the enamel found in the shipment at the time it was delivered. In fact, Mr. Sullivan, the General Manager of the defendant, admitted on the witness stand that the sample exhibited to the plaintiff prior to the sale was free from any foreign substances. The evidence also establishes beyond peradventure that the sugar which was delivered to Preserves & Honey, Inc. contained enamel or other foreign material. This is shown by the deposition of Mr. J. V. Dunne of Preserves & Honey, Inc. and by the affidavit of Mr. C. L. Clay, an analyst for the Louisiana State Board of Health.

The deposition of Mr. Dunne further reveals that it cost Preserves & Honey, Inc., the sum of $210.00 to reprocess the defective sugar and that this amount was charged against the plaintiff's account. In addition to this, plaintiff was required to expend the sum of $3.41 representing the cost of furnishing to the defendant one bag of the rejected sugar in order that the latter could have it analyzed.

We therefore agree with the district judge that the plaintiff has proved its case and that it is entitled to recover the full amount prayed for.

For the reasons assigned, our original opinion and decree is recalled and annulled and it is now ordered, adjudged and decreed that the judgment appealed from be and it is affirmed at defendant's cost.

Original decree recalled;
Judgment of trial court affirmed.